KERN, MAYOR *v.* STATE EX REL. BESS.

[No. 26,879. Filed November 5, 1937.]

*Reginald H. Sullivan* and *Edward H. Knight,* for appellants.

*Holmes & Holmes,* for appellee.

FANSLER, C. J.—This is an action to mandate the trustees of the Indianapolis police pension fund to place the relatrix upon the pension roll and to pay her the amount prescribed by law as the widow of Charles G. Bess, a deceased member of the Indianapolis police force, and to pay her the statutory burial fund. The evidence was stipulated and agreed upon. The cause was tried by the court, and there was judgment mandating the defendants to pay the amounts demanded.

Error is assigned upon the overruling of appellants' demurrer, but we need consider only the error assigned upon the overruling of appellants' motion for a new trial, which questions the sufficiency of the evidence.

The facts are: That on July 13, 1915, Charles G. Bess, the husband of relatrix, became a member of the

police department, and thereafter paid his assessments to the police pension fund. On June 24, 1919, "because of disability arising from an operation for stomach ulcers," he was, upon recommendation of the police surgeon, retired from active duty on the police force to the pension fund. The recommendation of the surgeon was by letter, reading as follows: "I recommend the retirement to the pension of Charles Bess, due to physical disability caused by an operation for gastric ulcer." There was a motion before the board that the retirement be made, which was unanimously carried, and the retirement was treated as effective as of June 24, 1919. From that date until his death from a cerebral hemorrhage, contributed to by stomach ulcers, on March 5, 1936, the trustees of the pension fund paid him each month an allotted pension as provided by law. On April 28, 1917, the relatrix became his wife, and continued to live with him, and they had one child, now eighteen years of age. Upon the death of her husband, relatrix notified the board of his death, and demanded that she be allowed the pension as surviving widow, as provided by law, and that she be paid the burial fund provided by law. Her demand was refused upon the ground that her husband was retired because of disability caused by an operation for gastric ulcer, having served only three years and eleven months in the department, and that under the law he was required to serve five years before he was entitled to a pension, unless injured in line of active duty.

By chapter 31 of the Acts of 1919 (Acts 1919, p. 72) the pension law was amended to provide that no member or his dependents shall be entitled to share in any of the benefits provided by the act "until he shall have been a member of such police force at least five (5) consecutive years and shall have passed the examination hereinafter provided for, except in case such member

shall receive a personal injury from violent external cause while in the actual discharge of his duty as such police officer, in which case, benefits due for injury, death or disability directly resulting therefrom, shall be payable regardless of length of the member's service." In section 2 of the act it is provided: "Such fund shall be used and devoted to the following purposes: First. To the payment of such temporary benefits as the board of trustees may determine, not in excess, however, of fifty dollars ($50) per month to such members of the active police force who have served for less than five (5) consecutive years and who have suffered personal injury from violent external causes while in the actual discharge of their duties as police officers, and to such police officers who have served over five (5) years and who have passed the physical examination. . . ."

The act quoted from was in force at the time of the action of the board retiring Bess. Bess had not served upon the police force for five consecutive years at the time of his retirement. There was no showing or finding, or is there now any claim, that his retirement was caused from a personal injury from violent external causes while in the actual discharge of his duty as a police officer. There was therefore no basis for payments to Bess out of the pension fund, nor is there any basis for payments to his widow.

It is contended by appellee that, since the statute of 1919 went into effect after Bess became a member of the pension fund and had made payments thereto, he had a vested right which could not be changed or abrogated by a change in the statutory provision concerning payment from the fund. The pension fund is accumulated by taxation, by contributions and awards of various sorts, and by enforced contribution by members of the police force. It is established by the great weight of authority in other jurisdictions, including the

Supreme Court of the United States, that such pensions are gratuities; that they involve no agreement of the parties and create no vested rights, notwithstanding compulsory contributions by the parties in the form of allotted sums retained out of the member's pay. In a case involving this question, the Supreme Court of the United States said, concerning contributions to the fund by way of deduction from the compensation of the officer: "Notwithstanding, therefore, in this case, the petitioner avers that the deceased police officer contributed out of his salary two dollars a month, pursuant to the law in question, and, in substance, that the fund which was to pay the one thousand dollars claimed was created out of like contributions of the members of the police, the court, looking to the statute, sees that, in point of fact, no money was contributed by the police officer out of his salary, but that the money which went into that fund under the act of April 1, 1878, was money from the State retained in its possession for the creation of this very fund, the balance—one hundred dollars—being the only compensation paid to the police officer. Though called part of the officer's compensation, he never received it or controlled it, nor could he prevent its appropriation to the fund in question. He had no such power of disposition over it as always accompanies ownership of property. . . . There was no contract on the part of the State that its disposition should always continue as originally provided. Until the particular event should happen upon which the money or a part of it was to be paid, there was no vested right in the officer to such payment." *Pennie* v. *Reis* (1889), 132 U. S. 464, 470, 471, 10 S. Ct. 149. See, also, cases collected, 54 A. L. R. 943 and 98 A. L. R. 505.

The error of the former board in allowing the retirement upon pension, and erroneously paying an unau-

thorized pension over a number of years does not estop the present board to deny the right to the pension. The board, and its members, in respect to determining who are eligible, exercise only a ministerial duty in respect to a public fund, and cannot bind the fund for payments which are not permitted by the legislation which created and controls the disposition of the fund.

Judgment reversed, with instructions to enter judgment for the defendants.