In re the PATERNITY OF M.R.

Mauri Goens, Appellant–Respondent,

v.

Jalen Rose, Appellee–Petitioner.

No. 29A05–0207–JV–316.

Court of Appeals of Indiana.

Nov. 21, 2002.

Lilaberdia Batties, Sheryl L. Lynch, Indianapolis, IN, Attorneys for Appellant.

Karl L. Mulvaney, James A. Reed, Nana Quay–Smith, Denise W. Chavis, Bingham McHale, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Mauri M. Goens ("Mother") appeals the trial court's Paternity and Child Support Decree, claiming that the trial court lacked jurisdiction over the Verified Petition to Establish Paternity filed by Jalen Rose ("Father"). We affirm the trial court's determination of paternity, but vacate the court's support order for lack of jurisdiction.

### Issues

Mother raises the following three issues: (1) did the trial court err by exercising jurisdiction over Father's Petition; (2) should the trial court have granted Mother's motion to continue the hearing; and (3) was the trial court's child support order erroneous? Because of our resolution of the first issue, we do not address the second and third questions.

### Facts and Procedural History

Mother met Father, a professional basketball player, in 1996 during Father's first season with the Indiana Pacers. In August of 1999, Mother moved in with Father. M.R. was born to the unmarried couple during the off-season on July 14, 2000 in Indianapolis. The next day, the couple executed a Paternity Affidavit, acknowledging that Father was the biological father of M.R. Mother and M.R. moved to Georgia in late September or early October of 2001, before Father left for training camp during first week of October 2001. Father continued to maintain Mother and M.R.'s living expenses. Father was traded by the Pacers to the Chicago Bulls in February of 2002, but kept his residency in Indiana.

On April 15, 2002, Father filed his Verified Petition to Establish Paternity in the Hamilton County Superior Court. Father asked the trial court to declare him M.R.'s biological father pursuant to the original paternity affidavit, and expressed his desire that "he and Mother develop a plan of care for the minor child, and that the parameters of their future relationship as parents to each other and to the minor child be carefully delineated through a Final Decree Establishing Paternity." On April 16, 2002, the petition, as well as the trial court's Order to Appear at a hearing scheduled in the matter on April 30, 2002, was served on Mother in Georgia. On April 24, 2002, Mother filed her own Complaint to Establish Paternity in the Superior Court of Fulton County, Georgia.

The Hamilton County Superior Court held a hearing on Father's Petition as scheduled on April 30, 2002. Before the hearing began, Mother's attorney entered her appearance and filed a Motion to Dismiss for Lack of Personal Jurisdiction and Insufficient Notice to Persons Outside This State. Mother argued in part that the trial court's exercise of jurisdiction was premature because, pursuant to Indiana Code section 31–17–3–5(b), hearings to determine issues governed by the Uniform Child Custody Jurisdiction Law ("UCCJL"), Ind.Code §§ 31–17–3–1 to – 25, must be conducted at least twenty days after notice is given to a person living

outside Indiana. Mother also orally moved to continue the hearing once it began. The trial court heard arguments on Mother's motion to dismiss and her motion to continue. Father conceded that the hearing was being held fewer than twenty days after notice had been given to Mother, an out of state resident, but took the position that the UCCJL applied only to custody issues, and not to questions regarding support. Father accordingly asked the trial court to postpone custody and visitation issues for a subsequent hearing, but to determine his support obligations immediately. The trial court denied Mother's motion to continue, and advised the parties that the court would take the motion to dismiss under advisement. The trial court then heard evidence regarding Father's income for purposes of determining his support obligation. At the conclusion of the hearing, the trial court advised the parties that it would take the matter under advisement and would not issue a ruling until the parties submitted additional briefs addressing Mother's jurisdictional challenge.

On May 10, 2002, Mother filed an amended motion to dismiss and supporting memorandum, and Father filed a supplemental brief in response to Mother's motion. In Mother's memorandum, she argued that the trial court lacked subject matter jurisdiction over Father's petition under both the UCCJL and the Uniform Interstate Family Support Act (UIFSA). On May 15, 2002, the trial court denied Mother's motion to dismiss, and ordered Father to pay $584.00 per week in child support for M.R. Mother appeals.

### Discussion and Decision

#### A. Standard of Review

 A court's jurisdiction either exists or does not, and the question of a court's jurisdiction is accordingly a question of law that is not entrusted to the trial court's discretion. Rather, it is reviewed de novo. *See Anthem Ins. Cos. Inc. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1237–38 (Ind.2000) (personal jurisdiction); *Turner v. Richmond Power and Light Co.*, 763 N.E.2d 1005, 1007–08 (Ind.Ct.App. 2002) (subject matter jurisdiction), *trans. denied*. To the extent the existence of jurisdiction must be determined on the basis of disputed facts, the trial court's determination of jurisdictional facts is reviewed for clear error. *Id.*

#### B. Analysis

##### 1. The Uniform Child Custody Jurisdiction Law—UCCJL

Mother argues that the trial court lacked subject matter jurisdiction over Father's Petition pursuant to the terms of the UCCJL. The UCCJL provides, in pertinent part, that "[a] court of this state ... has jurisdiction to make a child custody determination ... if ... this state ... is the home state of the child at the time of commencement of the proceeding...." IND.CODE § 31–17–3–3(a)(1). In *Campbell v. Campbell*, 180 Ind.App. 351, 388 N.E.2d 607, 609 (1979), this Court explained that this standard describes the subject matter jurisdiction of the trial court. In *Williams v. Williams*, 555 N.E.2d 142, 144–145 (Ind. 1990), however, our supreme court ruled that "[t]he jurisdictional limitations imposed by the [UCCJL] are not equivalent to declarations of subject matter jurisdiction, but rather are refinements of the ancillary capacity of a trial court to exercise authority over a particular case." Under the UCCJL, a child's "home state" is "the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as parent, for at least six (6) consecutive months...." IND.CODE § 31–17–3–2(5).

Father testified during the hearing that Mother and M.R. moved from Indiana to Georgia in late September or early October 2001, before Father started training camp during the first week of October of that year. Father filed his petition on April 15, 2002, more than six months after Mother and M.R. left the state, according to Father's testimony. While Father testified that he visited with M.R. in Indiana during the intervening months, there is no evidence in the record indicating that Mother and M.R. lived anywhere other than Georgia during this period. Mother contends that the trial court lacked jurisdiction over the case because Georgia, and not Indiana, was M.R's "home state" under the UCCJL.

Father argues that the UCCJL does not apply here, and the trial court's jurisdiction was therefore not limited by Indiana Code section 31–17–3–3. In particular, Father argues that the UCCJL applies by its own terms only to custody disputes. He contends that he filed an action for child support, and that custody of M.R. was not at issue here.

First, Father did not file an action for child support. An action for child support is commenced "by the filing of a petition entitled, 'In Re the support of _____.'" IND.CODE § 31–16–2–3. Father did not file such a petition. Rather, Father filed a Verified Petition to Establish Paternity. Paternity actions are governed by Indiana Code sections 31–14–1–1 to 31–14–21–12.

■ Moreover, while the UCCJL applies to "custody proceedings," the statute defines that term to include matters beyond determinations of custody. This Court has recognized that the UCCJL governs custody proceedings with an interstate dimension. *See Robinaugh v. Rogers (In re Robinaugh)*, 616 N.E.2d 409, 411 (Ind.Ct.App.1993). The UCCJL defines the term "custody proceeding" to include "proceedings in which a custody determination is one of several issues, such as an action for dissolution of marriage, but does not include child in need of services proceedings; ..." IND.CODE § 31–17–3–2(3). A "custody determination" is "a court decision ... providing for the custody of a child, including visitation rights; it does not include a decision relating to child support or any other monetary obligation of any person." IND.CODE § 31–17–3–2(2). When a trial court makes a custody determination within the context of a custody proceeding, the determination is called a "custody decree." IND.CODE § 31–17–3–2(4) (defining a "custody decree" as "a custody determination contained in a judicial decree or order made in a custody proceeding, and includes an initial decree and a modification decree.") Here, Father's paternity action was subject to the requirements of the UCCJL because it amounted to a "custody proceeding" that would have resulted in a "custody decree" under the UCCJL.

Under the code provisions governing paternity actions, a man who, like Father, executed a paternity affidavit is presumed to be the biological father of the child in question. IND.CODE § 31–14–7–1. In Father's paternity petition, Father asked the trial court to declare him M.R.'s father on the basis of his paternity petition. Indiana Code section 31–14–11–1 gives a trial court the power to enter an order establishing paternity and child support, without the need to conduct paternity fact-finding, on the basis of an uncontested paternity affidavit. Once the trial court finds that a man is a child's biological father, the trial court must "conduct a hearing to determine the issues of support, custody, and visitation." IND.CODE § 31–14–10–1. Thus, Father placed the support, custody and visitation of M.R. at issue in this case

when he filed his paternity petition. Because the matter was one in which a custody determination was one of several issues to be decided, it was a "custody proceeding" under the UCCJL. Further, the matter had an interstate dimension as a result of the fact that Mother and M.R. lived outside Indiana at the time Father filed his paternity petition. The UCCJL therefore applied.

Father recognized this relationship between his paternity action and the UCCJL in his petition, which alleged that "[p]ursuant to the Uniform Child Custody Jurisdiction Law, codified in Indiana Law under I.C. § 31–17–3–1 *et seq.*, Indiana should be considered the minor child's home state, and Indiana, therefore, has jurisdiction to adjudicate all issues concerning this paternity action." (App. 90.) Father asked that paternity be established, and "that he and [Mother] develop a plan of care for the minor child, and that the parameters of their future relationship as parents to each other and to the minor child be carefully delineated through a Final Decree Establishing Paternity." (App. 90–91.) Further, Father's counsel made the following statements regarding the applicability of the UCCJL at the outset of the hearing on the petition:

> [This matter was filed on] April 15th, by Mr. Rose, asking the Court to go ahead and issue orders regarding the custody, support, and care of his child [M.R.]. Pursuant to Indiana statute we have, Mr. Rose has signed a paternity affidavit as well as Ms. Goens, which by law establishes paternity. Therefore, we're going forward with simply the adjudication of the support and custody and access time and other related issues. . . . There is some question given the date of the service that under the UCCJL which is our Uniform Child Custody Jurisdiction Act that there was not sufficient notice for child or custody and parenting

time issues. And we would concede that given the dates that that is true. So today from our perspective the Court can move forward with entering support, a support order for the child but then set all of the matters relating to the custody and parenting time to another, a later date so that there is sufficient notice under the UCCJL. . . .

. . . .

> We concede that under the UCCJL which kicks in any time you have a dispute between states regarding the custody of a child that you have to follow the prescripts of that statute and that statute is very clear about notice provisions for a hearing.

(Tr. 5, 6–7.) Father was right, and his current protestations to the contrary are unavailing.

Father argues that even if his petition is subject to the UCCJL, the jurisdictional provision cited by mother did not deprive the trial court of jurisdiction over Father's petition because the provision in question relates only to the court's power to issue a "custody determination." *See* IND.CODE § 31–17–3–3(a)(1). A custody determination, as noted above, is precisely what the term indicates—a court decision providing for custody. IND.CODE § 31–17–3–2(2). The term specifically excludes from its definition decisions relating to child support or any other monetary obligation. *Id.* Consistent with his contention regarding the general applicability of the UCCJL to this case, Father more particularly argues that the jurisdictional provision in question does not apply to his petition because Father's petition was one for child support, and was not a request for a determination of custody.

▪ We agree with Father that the UCCJL jurisdictional provision in question, Indiana Code section 31–17–3–3, only

addresses a trial court's power to issue a child custody determination as that term is defined in the statute. Again, however, Father filed a petition to establish paternity and not an action for child support. As we have noted, custody of M.R. was therefore at issue in the case. Pursuant to Indiana Code section 31–17–3–3, the trial court had jurisdiction to issue a custody determination in connection with Father's paternity petition if Indiana was M.R.'s "home state" at the time Father filed his petition. A child's "home state", as previously noted, is "the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as parent, for at least six (6) consecutive months...." IND.CODE § 31–17–3–2(5). The undisputed evidence, coming directly from Father, was that

Mother and M.R. moved from Indiana to Georgia not later than the first week in October 2001, six months before Father filed his paternity petition on April 15, 2002. Therefore, Georgia, and not Indiana, was M.R.'s "home state" at the time Father filed his petition, and the trial court lacked jurisdiction to issue a child custody determination.[1]

While we agree with Mother that the jurisdictional provision she cites deprived the trial court of jurisdiction to issue a custody determination, we also agree with Father that the provision did not limit the trial court's jurisdiction to rule on non-custodial matters raised by his paternity petition because, as Father notes, the provision only limits the trial court's power to issue custody determinations.[2] This does

---

1. The statute also permits a trial court to exercise jurisdiction when:(2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
(3) the child is physically present in this state and the child has been abandoned; or
(4) (A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child that this court assume jurisdiction.
IND.CODE § 31–17–3–3(a). These alternative bases for jurisdiction do not apply. First, if a child has a "home state", it is not necessary to apply the best interests/significant connection test set out at Indiana Code section 31–17–3–3(a)(2) to determine jurisdiction. *Hughes v. Hughes*, 665 N.E.2d 929, 932 (Ind. App.1996). Moreover, M.R. is not physically present in Indiana, and there is no indication that Georgia would not have jurisdiction to issue a custody determination.

2. The UCCJL's twenty-day notice provision set out at Indiana Code section 31–17–3–4 similarly addresses only the trial court's power to render a custody decision. Indiana Code section 31–17–3–4 provides that "[b]efore making a *decree* under this chapter, reasonable notice and opportunity to be heard shall be given to the contestants.... If any of these persons is outside this state, notice and opportunity to be heard shall be given pursuant to section 5 of this chapter." Section five of the chapter provides, among other things, that the notice required for the exercise of jurisdiction over a person outside Indiana must be served, mailed or delivered at least twenty days before any hearing in this state. IND.CODE § 31–17–3–5. Mother contends that pursuant to these provisions, the trial court should not have scheduled a hearing on Father's petition until at least twenty days after she was served with the petition on April 16, 2002. Because these notice provisions apply by their terms to the court's power to render a "decree," which again is defined under the UCCJL as a custody determination made within a judicial decree in a custody proceeding, the notice provisions only apply to hearings on the issue of custody, and the trial court was not precluded under the provisions from hearing matters other than custody within twenty days of service of the petition.

not end the inquiry, however, as Mother contends that the trial court nevertheless lacked jurisdiction to rule on the paternity and support issues under another statute, the Uniform Interstate Family Support Act (UIFSA), IND.CODE §§ 31–18–1–1 through 31–18–9–4.

### 2. The Uniform Interstate Family Support Act—UIFSA

■ Pursuant to the UIFSA, an Indiana trial court "may exercise personal jurisdiction over a nonresident individual" in a proceeding "to establish, enforce, or modify a support order or to determine paternity" if, among other things, the individual resided in Indiana with the child. IND. CODE § 31–18–2–1(3). Mother lived in Indiana with M.R. for a time, and was accordingly subject to the trial court's jurisdiction with regard to Father's paternity and support claims. Indiana Code section 31–18–2–4(b), however, addresses an Indiana trial court's jurisdiction to entertain proceedings in this state when similar proceedings have subsequently been filed in another state, and provides as follows:

An Indiana tribunal may not exercise jurisdiction to establish a support order if the petition is filed before a petition or comparable pleading is filed in another state if:

(1) the petition or comparable pleading in the other state is filed before the expiration of the time allowed in Indiana for filing a responsive pleading challenging the exercise of jurisdiction by Indiana;

(2) the contesting party timely challenges the exercise of jurisdiction in Indiana; and

(3) the other state is the home state of the child, if relevant.

Under the UIFSA, a "support order" is a judgment, decree or order "for the benefit of a child . . ., which provides for monetary support. . . ." IND.CODE § 31–18–1–24. The trial court here lacked jurisdiction under this provision to issue a support order.

First, as noted above, Mother filed her Complaint to Establish Paternity, which included a request for child support, on April 24, 2002, nine days after Father filed his paternity petition in Indiana. This was filed within the time permitted to file a responsive pleading challenging the Indiana trial court's jurisdiction. Further, Mother asserted a timely challenge to the Indiana trial court's jurisdiction by filing her motion to dismiss on April 30, 2002.[3] Finally, as under the UCCJL, a child's "home state" under the UIFSA is "the state in which a child lived with a parent . . . for at least six (6) consecutive months immediately preceding the time of filing of a petition comparable pleading for support. . . ." IND.CODE § 31–18–1–5. As noted above, Father testified that Mother and M.R. moved from Indiana to Georgia not later than the first week in October 2001, six months before Father filed his paternity petition on April 15, 2002. Therefore, Georgia, and not Indiana, was M.R.'s "home state" under the UIFSA. Although Mother filed her support request in Georgia after Father filed his in Indiana, the Indiana trial court lacked jurisdiction over Father's petition under Indiana Code section 31–18–2–4 because Georgia was M.R.'s home state and because Mother filed her

**3.** Father agues that Mother waived her opportunity to challenge the trial court's jurisdiction under the UIFSA because she did not raise the issue in her initial motion to dismiss. At the conclusion of the hearing, however, the trial court instructed the parties to submit additional briefing on the issue of the court's jurisdiction. Pursuant to the trial court's instructions, Mother submitted an amended brief asserting the UIFSA challenge. The challenge was accordingly timely, and Mother did not waive the issue.

request and her jurisdictional challenge in a timely manner.

Mother points to no authority indicating that the Indiana trial court lacked jurisdiction to rule on Father's request for an order establishing his paternity, and we accordingly affirm the trial court's determination in that regard. The trial court's support order, however, must be vacated for lack of jurisdiction.[4]

Reversed in part and affirmed in part.

SULLIVAN, J., and MATHIAS, J., concur.

---

4. Father argues that we should not determine that Indiana lacks jurisdiction over his support request because, according to Father, the Georgia court in which Mother filed her competing petition lacks the jurisdiction over Father necessary to issue a support order. Without passing on the validity of Father's assertion regarding his amenability to the Georgia court's jurisdiction, we note that any problem with the court's authority to order Father to pay support would appear to rest with Mother. If Father is concerned about Mother's ability to secure a support order in Georgia, he may presumably submit to the jurisdiction of the Georgia court.