METROPOLITAN EMERGENCY COMMUNICATIONS AGENCY and Eric Wright, Appellants–Defendants,

v.

James CLEEK and Molly Cleek, Appellees–Plaintiffs.

No. 49A02–0408–CV–699.

Court of Appeals of Indiana.

Oct. 13, 2005.

Jeffrey S. McQuary, Office of Corporation Counsel, Indianapolis, IN, Attorney for Appellants.

Mark C. Ladendorf, Daniel A. Ladendorf, Indianapolis, IN, Attorneys for Appellees.

## OPINION

MATHIAS, Judge.

James Cleek ("Cleek") and Molly Cleek filed a complaint in Marion Superior Court against the Metropolitan Emergency Communications Agency ("MECA") and its employee, Eric Wright ("Wright"), alleging that Wright's negligent conduct caused in-

juries to Cleek. MECA and Wright moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to the exclusivity provision of the Worker's Compensation Act. In response, Cleek, a Marion County Sheriff's Deputy, asserted that MECA is an agency of the City of Indianapolis, and not Marion County. The trial court denied MECA's and Wright's motion to dismiss. Concluding that MECA is an agency of Marion County, we reverse and remand.

### Facts and Procedural History

On May 28, 2000, Cleek was on duty at the Indianapolis 500. Wright, a technician for MECA, was removing an awning attached to MECA's mobile communications van, when the awning struck Cleek's head causing injuries. As a result of those injuries, Cleek received a $6300 permanent partial impairment award through the Marion County Sheriff's Department's worker's compensation plan.

On May 24, 2002, Cleek filed a complaint against MECA, Wright and Zip Dee, Inc., the manufacturer of the awning.[1] On February 4, 2004, MECA and Wright moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to the exclusivity provision of the Worker's Compensation Act. In their motion, MECA and Wright asserted that MECA is a Marion County agency. In response, Cleek argued that MECA is an agency of the City of Indianapolis.

The trial court denied MECA and Wright's motion to dismiss without findings of fact and conclusions of law on June 30, 2004. At MECA's and Wright's request, the trial court certified its order denying the motion to dismiss for interloc-

utory appeal. Our court accepted jurisdiction of this appeal on October 12, 2004. Additional facts will be provided as necessary.

### Standard of Review

The Worker's Compensation Act provides the exclusive remedy for injuries that "arise out of and in the course of" a person's employment. Ind.Code § 22–3–2–2 (1991). "If the Act covers an injury, the courts have no jurisdiction to entertain common law claims against the employer or a fellow employee." *Knoy v. Cary*, 813 N.E.2d 1170, 1171 (Ind.2004). MECA and Wright moved to dismiss Cleek's complaint for lack of subject matter jurisdiction asserting that Wright and Cleek have the same employer, Marion County.

Our standard of review of the trial court's denial of a motion to dismiss pursuant to Indiana Trial Rule 12(B)(1) is a function of what occurred in the trial court.[2] *Turner v. Richmond Power & Light Co.*, 763 N.E.2d 1005, 1007 (Ind.Ct. App.2002), *trans. denied.* The standard of appellate review is dependent upon: (1) whether the trial court resolved disputed facts; and (2) if so, whether the trial court conducted an evidentiary hearing or ruled on a "paper record." *Id.* If the facts before the trial court are not in dispute, the question of subject matter jurisdiction is purely one of law and no deference is afforded to the trial court's conclusion. *Id.* The standard of review is de novo. *Id.* In the present case, the facts are not in dispute; rather, it is the inferences to be drawn from those facts that are in dispute. Accordingly, our review is de novo.

---

1. Zip Dee was voluntarily dismissed from the case as the result of settlement proceedings.

2. When a trial court rules on a motion to dismiss for lack of subject matter jurisdiction

the court may consider any affidavits or evidence submitted in support of the motion. *Turner v. Richmond Power & Light Co.*, 756 N.E.2d 547, 550 (Ind.Ct.App.2001).

## Discussion and Decision

The issue presented in this appeal arises from the unique nature of city and county government in Indianapolis and Marion County. In 1969, the "Unigov" Act reorganized the municipal and county governments in counties containing a city of the first class, which then and now applies only to the City of Indianapolis and Marion County. *See Peterson v. Borst*, 786 N.E.2d 668, 669 (Ind.2003). "This legislation enabled consolidation of certain governmental functions, eliminating the overlapping jurisdictions of various county and municipal boards and departments."[3] *See id.*

When the City of Indianapolis became a consolidated city, its boundaries were expanded to include "all the territory that comprised" the City of Indianapolis "before it became a consolidated city" and "all other territory in" Marion County "except territory of an excluded city."[4] *See* Ind. Code § 36–3–1–4 (1997). Indiana Code section 36–3–1–4 also provides that "certain departments and special taxing districts of the consolidated city may have jurisdiction as provided by law over more or less territory than that inside the boundaries of the consolidated city."

MECA was created as a special taxing district pursuant to Indiana Code section 36–8–15–7(a), which states in pertinent part, the Indianapolis "public safety communications system and computer facilities district is created in the county as a special taxing district of the consolidated city. The territory of the district includes the entire county." Ind.Code § 36–8–15–7 (1997). The purpose of MECA is:

(1) To provide and maintain modern, dependable, and efficient public safety communications systems within the district for the purpose of promoting the expeditious delivery of public services to the residents and taxpayers throughout the district in order to assure the public health, safety, morals, and general welfare.

(2) In a county having a consolidated city, to provide computers for the efficient functioning of governmental offices for the benefit of the residents and taxpayers throughout the district.

Ind.Code § 36–8–15–8 (1997).

We have considered similar circumstances before. In *Turner v. Richmond Power & Light Co.*, 756 N.E.2d 547 (Ind. Ct.App.2001), *aff'd on reh'g* 763 N.E.2d 1005 (Ind.Ct.App.2002), a city employee was injured when he was electrocuted while installing a sewer line. *Id.* at 550. The employee received worker's compensation benefits, but also sued the electric company, Richmond Power & Light, ("RPL") which was owned by the City of Richmond. The employee's complaint was dismissed for lack of subject matter jurisdiction and he appealed. *Id.*

After determining that RPL was a hybrid entity that could not be "neatly 'pigeonholed' as a governmental agency or as a separate and distinct entity from the City," our court analyzed the structure of RPL and its relationship to the City to determine whether the employee's claim was barred by the exclusivity provision of the Worker's Compensation Act. *Id.* at 555. Although there were several facts

---

**3.** In *Scott et al. v. City of Indianapolis et al.*, 833 N.E.2d 1094, 1101 (Ind.Ct.App.2005), our court held that the City of Indianapolis and Marion County are separate governmental entities.

**4.** The four excluded cities are Lawrence, Southport, Beech Grove, and the town of Speedway. *See Scott*, 833 N.E.2d at 1100; City of Indianapolis website *available at* http://www.indy gov.org/eGov/ Council/home.htm (last visited on October 5, 2005).

supporting the conclusion that RPL was an agency of the City, including a shared worker's compensation carrier, our court concluded that RPL was a separate entity from the City. *Id.* at 556–58. In reaching that conclusion, we relied on the following facts: RPL was not included in the City's organizational chart, the City played no role in RPL's personnel matters, the City did not participate in RPL's employment decisions or training of its employees, the benefits provided to City and RPL employees differed, RPL contracted directly with its customers, RPL and the City maintained separate accounts, and RPL maintained its own budget. *Id.*

The following undisputed facts lead us to the conclusion that MECA is a Marion County agency. MECA is governed by a five-member board consisting of the Marion County Sheriff, the Mayor of Indianapolis, the Director of the Health and Hospital Corporation, a township trustee, and the mayor of one of Marion County's excluded cities.[5] Appellant's App. p. 75. Appropriations for MECA are subject to the approval of the City–County Council and MECA is funded both by a special taxing district and the Marion County General Fund.[6] Appellant's App. p. 17. The Marion County Treasurer has the authority to invest the money in MECA's nonreverting "MECA emergency telephone system fund" "in the same manner that other money of the county may be invested[.]"[7] Appellant's App. p. 32.

██ MECA's employees are paid by Marion County. Appellant's App. p. 88.

MECA employees also have the same benefits provided to Marion County employees and are covered by the same worker's compensation plan. Appellant's App. p. 17. MECA's liability insurance is provided by the Marion County self-insured plan. *Id.* Finally, and most important to our resolution in this case, any judgment rendered against MECA is paid through the Marion County Auditor out of its operating fund. Appellant's App. p. 17.

We are not convinced by Cleek's argument that the City–County Council has established MECA as a Marion County agency in violation of the "Unigov" Act and Indiana Code chapter 36–8–15. Pursuant to chapter 36–8–15, the City–County Council is granted the authority to enact ordinances establishing the board and operation of MECA. There is nothing in the Unigov Act or chapter 36–8–15 which leads us to the conclusion that the City–County Council was required to establish MECA as an agency of the City of Indianapolis. Moreover, we are unpersuaded by Cleek's reliance on the language in those statutes describing MECA as a "special taxing district of the consolidated city." *See e.g.,* Ind.Code § 36–8–15–7.

It is clear that the Unigov act created hybrid organizations with conflicting sources of authority and overlapping jurisdictions. But unlike the hybrid nature of the utility discussed in *Turner,* the facts set forth above support the conclusion that MECA is solely an agency of Marion County. Because both Cleek and Wright are employees of Marion County, Cleek's exclusive remedy for his injuries was to

---

5. Pursuant to Indiana Code section 36–8–15–2, the City–County Council has the authority to establish the MECA board.

6. With its motion to dismiss, MECA and Wright submitted copies of Marion County's 2004 proposed budget. MECA's proposed budget in 2004 was $4,874,856. Appellant's App. p. 20. MECA's board prepares a budget estimate and submits it to the "county fiscal officer." Appellant's App. p. 29.

7. However, income earned on those investments reverts to MECA's funds and do not lapse into the county general fund. Appellant's App. pp. 31–32.

pursue a claim for worker's compensation benefits. *See* Ind.Code § 22–3–2–6 (1991 & Supp.2004); *Knoy,* 813 N.E.2d at 1171 ("If the [Worker's Compensation] Act covers an injury, the courts have no jurisdiction to entertain common law claims against the employer or a fellow employee."). Accordingly, we conclude that the trial court lacks subject matter jurisdiction to address Cleek's claims against MECA and Wright, and therefore, the court erred when it denied the latters' motion to dismiss.

Reversed and remanded for proceedings consistent with this opinion.

DARDEN, J., and CRONE, J., concur.